IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PATRICK S. and NOAH S.,<br><br>                Plaintiffs,<br>v.<br><br>UNITED BEHAVIORAL HEALTH d/b/a OPTUM and MOTION PICTURE INDUSTRY HEALTH PLAN FOR ACTIVE PARTICIPANTS,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF ACTION<br><br><br>Case No. 2:20-CV-283-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants United Behavioral Health ("UBH") and Motion Picture Industry Health Plan for Active Participants' (collectively, "Defendants") Motion to Dismiss Plaintiffs' Second Cause of Action, which is a claim for a violation of the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"). For the following reasons, the Court will deny the Motion.

                              I.        BACKGROUND

In their Complaint, Plaintiffs Patrick S. and Noah S. challenge Defendants' denial of insurance benefits for medical care and treatment Noah received from 2017 to 2018. Patrick is Noah's father and is a participant in the Plan, which provides health benefits for participants and their dependents.[1] Following a brief stay in an acute inpatient psychiatric unit, Noah was

---

[1] Docket No. 2 ¶¶ 1–2.

1

admitted to Evoke Wilderness Program ("Evoke") on February 9, 2017.[2] Noah remained at Evoke until April 27, 2017.[3] Then, on April 28, 2017, Noah was admitted to Catalyst Residential Treatment ("Catalyst") and remained there until July 31, 2018.[4]

On August 18, 2017, UBH denied coverage of Noah's treatment at Evoke because it determined that wilderness therapy programs are "experimental or unproven treatment."[5] Patrick appealed, and on March 28, 2018, UBH maintained the denial of coverage for the treatment at Evoke because Noah was not at risk for harm to himself or others, was medically stable, was not experiencing withdrawal symptoms, was not under the care of a psychiatrist, and did not require 24-hour medical or psychiatric care, and because outdoor behavioral healthcare programs are experimental and unproven.[6] Patrick submitted a second appeal, but UBH denied coverage of Noah's treatment at Evoke again on July 12, 2018, relying on the same justifications.[7]

UBH covered Noah's treatment at Catalyst from April 28, 2017 through May 26, 2017, but denied coverage from May 27, 2017 and beyond.[8] According to UBH, Noah's conditions did not meet the Level of Care Guidelines because he was medically stable and his behavior was better.[9] But UBH authorized ongoing partial hospitalization treatment for Noah.[10] Patrick appealed the denial of coverage with letters from Noah's psychologists recommending

---

[2] *Id.* ¶¶ 5, 18–19.
[3] *Id.* ¶ 19.
[4] *Id.* ¶ 5.
[5] *Id.* ¶ 27.
[6] *Id.* ¶ 37.
[7] *Id.* ¶¶ 39, 43.
[8] *Id.* ¶¶ 44–45.
[9] *Id.* ¶ 45.
[10] *Id.*

2

residential treatment as medically necessary and Noah's medical records that indicated an ongoing need to remain in a residential treatment setting.[11] Patrick also argued that Noah's conditions met UBH's residential treatment medical necessity criteria.[12] On June 21, 2018, UBH maintained its denial of coverage for the same reasons it originally denied coverage.[13] Patrick submitted a second appeal, but UBH denied coverage for a third time with no new reasoning.[14]

After their unsuccessful appeals, Plaintiffs submitted their Complaint against Defendants, claiming violations of the Employment Retirement Income Security Act of 1974 and the Parity Act. In response, Defendants filed this motion to dismiss the Parity Act claim for failure to state a claim.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a claim when the complaint fails to state a claim upon which relief can be granted.[15] "'[L]abels and legal conclusions' or 'a formulaic recitation of the elements of a cause of action'" alone are not sufficient to survive a motion to dismiss.[16] Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[17] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for

---

[11] *Id.* ¶¶ 46–47.

[12] *Id.* ¶ 48.

[13] *Id.* ¶ 49.

[14] *Id.* ¶¶ 51–55.

[15] Fed. R. Civ. P. 12(b)(6); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[17] *Id.* (internal citation and quotation marks omitted).

3

the misconduct alleged."[18] Put simply, at this stage the factual allegations are assumed to be true, and "relief must follow from the facts alleged."[19]

### III.  ANALYSIS

With their Motion, Defendants challenge Plaintiffs' Parity Act claim. "Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[20] In relevant part, the Parity Act states,

> In the case of a group health plan . . . that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that . . . the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.[21]

"[T]here is no clear law on how to state a claim for a Parity Act violation," so "district courts have continued to apply their own pleading standards."[22] Notably, "[c]ourts in this jurisdiction favor permitting Parity Act claims to proceed to discovery to obtain evidence regarding a properly pleaded coverage disparity."[23]

---

[18] *Id.*

[19] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

[20] *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)).

[21] 29 U.S.C. § 1185a(a)(3)(A)(ii).

[22] *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1234 (D. Utah 2019).

[23] *Id.* at 1235.

Citing *Welp v. Cigna Health and Life Insurance Company*[24] and a handful of other cases, Defendants suggest the Court should require Plaintiffs to "(1) identify a specific treatment limitation in [the] plan applicable to behavioral health treatment; (2) identify services in the medical or surgical arena that are both covered under the plan and analogous to the specific behavioral health services at issue; and (3) plausibly allege a disparity in the limitation criteria applicable to this analogous medical or surgical service on the one hand and the mental health or substance use treatment on the other."[25] Defendants further argue that Plaintiffs do not sufficiently plead any of these elements in their Complaint.[26] Plaintiffs generally agree with these three elements but argue that the third element should not include the word "plausibly" out of concern that the Court will improperly analyze the plausibility of the facts alleged in the Complaint, exceeding the standard that is set forth in *Twombly* and *Iqbal*.[27] However, this Court has previously stated that plaintiffs must "plausibly allege" a disparity to state a Parity Act claim, and there is no indication that this language improperly affected the motion to dismiss analysis.[28]

This Court has previously articulated other concerns about the pleading standard described in *Welp* because it only applies to a facial Parity Act claim where the limitations on mental health/substance abuse benefits are found in the plan.[29] This Court has repeatedly

---

[24] No. 17-80237-CIV, 2017 WL 3263138 (S.D. Fla. July 20, 2017) (unpublished).

[25] Docket No. 14, at 9–10.

[26] *See id.* at 2.

[27] Docket No. 18, at 6–7.

[28] *See David P. v. United Healthcare Ins. Co.*, No. 2:19-cv-00225-JNP-PMW, 2020 WL 607620, at *15 (D. Utah Feb. 7, 2020) (unpublished); *Johnathan Z. v. Oxford Health Plans*, No. 2:18-cv-383-JNP-PMW, 2020 WL 607896, at *13 (D. Utah Feb. 7, 2020) (unpublished); *Charles W. v. United Behavioral Health*, No. 2:18-cv-829-TC, 2019 WL 6895331, at *4 (D. Utah Dec. 18, 2019) (unpublished).

[29] *See Kurt W. v. United Healthcare Ins. Co.*, No. 2:19-cv-223-CW, 2019 WL 6790823, at *4 (D. Utah Dec. 12, 2019) (unpublished) ("Plaintiffs are not required to plead a

5

recognized that a Parity Act claim can be brought as either a facial challenge or an as-applied challenge.[30] In other words, the disparities in treatment limitations may be found in the language of the plan or in application of the plan. Consistent with this principle, the Court will apply the following standard: Plaintiffs must "(1) identify a specific treatment limitation on mental health benefits, (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which [Plaintiffs] seek benefits, and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that [Defendants] would apply to the covered medical/surgical analog."[31]

A. Treatment Limitation

First, Plaintiffs must identify a specific treatment limitation on mental health or substance abuse benefits. According to the relevant regulation, "[t]reatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration

---

specific plan limitation in order to state a claim for violation of the Parity Act."); *Michael W.*, 420 F. Supp. 3d at 1235 (discussing several concerns about the *Welp* standard); *Peter E. v. United HealthCare Servs., Inc.*, No. 2:17-cv-00435-DN, 2019 WL 3253787, at *3 (D. Utah July 19, 2019) (unpublished).

[30] *See William D. v. United Healthcare Ins. Co.*, No. 2:19-cv-00590-DBB-JCB, 2020 WL 4747765, at *3 (D. Utah Aug. 17, 2020) (unpublished); *Johnathan Z.*, 2020 WL 607896, at *14; *Michael W.*, 420 F. Supp. 3d 1207 at 1235.

[31] *Heather E. v. Cal. Physicians' Servs.*, No. 2:19-cv-415-CW, 2020 WL 4365500, at *3 (D. Utah July 30, 2020) (unpublished) (quoting *Nancy S. v. Anthem Blue Cross & Blue Shield*, No. 2:19-cv-231-JNP-DAO, 2020 WL 2736023, at *3 (D. Utah May 26, 2020) (unpublished)); *James C. v. Anthem Blue Cross & Blue Shield*, No. 2:19-cv-38-CW, 2020 WL 3452633, at *2 (D. Utah June 24, 2020) (unpublished) (quoting *Nancy S.*, 2020 WL 2736023, at *3); *David P.*, 2020 WL 607620, at *15; *Johnathan Z.*, 2020 WL 607896, at *13–14 (applying the three-part test in a facial and as-applied context).

of benefits for treatment under a plan or coverage."[32] Treatment limitations can also be facial limitations, arising from the written plan or processes, or as-applied limitations, arising from the application of the plan.[33]

In response, Plaintiffs assert that the Complaint identifies five limitations that Defendants applied to Noah's mental health treatment. Four of these alleged limitations involve Defendants' failures to explain themselves or take into account certain evidence when reviewing and denying the claims. These failures are not necessarily limitations on treatment. However, Plaintiffs also allege that the claim reviewers "utilized acute medical necessity criteria" as a limitation on Noah's treatment at Evoke and Catalyst.[34] Plaintiffs support this allegation with language from UBH that it denied coverage because Noah was not at risk for harm to himself or others, was participating in treatment, was medically stable, and was not going through active withdrawals. Despite Defendants' argument, this is not a legal conclusion or a formulaic recitation of the elements; it is a factual allegation about a limitation on Noah's treatment. In addition, this Court has repeatedly found that an allegation that the insurance plan applied acute medical necessity requirements to the relevant mental health treatment is a sufficient factual allegation for a treatment limitation.[35] Thus, Plaintiffs sufficiently allege the first element of the claim.

B. Analogous Medical/Surgical Care

Second, Plaintiffs must identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which they seek benefits. Defendants

---

[32] 29 C.F.R. § 2590.712(a).

[33] *See id.* § 2590.712(c)(4)(iii); *Johnathan Z.*, 2020 WL 607896, at *13.

[34] Docket No. 2 ¶ 73.

[35] *Heather E.*, 2020 WL 4365500, at *3; *David P.*, 2020 WL 607620, at *19; *Johnathan Z.*, 2020 WL 607896, at *18; *Kurt W.*, 2019 WL 6790823, at *6.

recognize that Plaintiffs identified subacute inpatient care such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities as medical/surgical analogues to the treatment Noah received at Evoke and Catalyst. But Defendants argue that these factual allegations are too general and inaccurate. With this, Defendants are asking the Court to look to the merits of Plaintiffs' allegations, but that is not appropriate at the motion to dismiss stage of litigation. Rather, the Court must accept these allegations as true at this stage.

Even so, when responding to a similar argument this Court has explained that "the question of what medical/surgical care is analogous to the type of mental health/substance abuse care for which Plaintiffs sought benefits—residential inpatient treatment—is not up for debate."[36] Indeed, "[t]he Final Rules under the Parity Act states . . . that '[b]ehavioral health intermediate services are generally categorized in a similar fashion as analogous medical services; for example, residential treatment tends to be categorized in the same way as skilled nursing facility care in the inpatient classification.'"[37] Thus, on motions to dismiss this Court has consistently determined that analogizing mental health residential treatment centers and wilderness treatment programs to medical/surgical inpatient hospice and rehabilitation facilities is sufficient to state a Parity Act claim.[38] And Defendants do not suggest that the plan does not

---

[36] *David P.*, 2020 WL 607620, at *17.

[37] *Id.* (quoting Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008; Technical Amendment to External Review for Multi-State Plan Program, 78 Fed. Reg. 68, 247 (Nov. 13, 2013)).

[38] *Id.*; *Johnathan Z.*, 2020 WL 607896, at *15; *K.K. v. United Behavioral Health*, No. 2:17-cv-01328-DAK, 2020 WL 262980, at *4 (D. Utah Jan. 17, 2020) (unpublished); *K.H.B. ex rel. Kristopher D.B. v. UnitedHealthcare Ins. Co.*, No. 2:18-CV-00795-DN, 2019 WL 4736801, at *5 (D. Utah Sept. 27, 2019) (unpublished); *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18-cv-753-DAK, 2019 WL 2493449, at *4 (D. Utah June 14, 2019) (unpublished); *Michael W.*, 420 F. Supp. 3d at 1236.

cover the medical/surgical treatment analogues Plaintiffs identified. Therefore, Plaintiffs sufficiently allege the second element of their claim.

C. Disparity Between Treatment Limitations

Third, Plaintiffs must plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that Defendants would apply to the covered medical/surgical analogues. Defendants argue that Plaintiffs have not alleged a facial disparity or an as-applied disparity in the treatment limitations, but that is not the case. Plaintiffs allege that Defendants do not require "patients to satisfy the medical necessity criteria for acute inpatient treatment" for any of the medical/surgical analogues identified.[39] Yet, according to Plaintiffs, Defendants did apply the more stringent acute medical necessity criteria to Noah's mental health treatment. This is a factual allegation about the disparate treatment limitations that are applied to the different kinds of treatment.

Plaintiffs do not provide specific, detailed allegations about the standards Defendants apply to the medical/surgical analogues, but "a plaintiff need only plead as much of her prima facie case as possible based on the information in her possession."[40] More detailed information about the criteria for the medical/surgical analogues is not currently in Plaintiffs' possession.[41] Importantly, this Court has consistently held that an allegation like Plaintiffs'—that a defendant insurance company applied acute medical necessity criteria to the subacute inpatient mental health treatment but does not apply the acute standard to the subacute inpatient medical/surgical

---

[39] Docket No. 2 ¶ 72.

[40] *Timothy D.*, 2019 WL 2493449, at *3 (quoting *Melissa P. v. Aetna Life Ins. Co.*, 2:18-cv-216-RJS-EJF, 2018 WL 6788521, at *2 (D. Utah Dec. 26, 2018) (unpublished)).

[41] *See Melissa P.*, 2018 WL 6788521, at *3 (recognizing that a plaintiff would not be able to allege more specific details about the standards applied to the medical/surgical analogues unless the plaintiff "had personal experience with both standards").

analogues—is sufficient to state a claim.[42] Thus, Plaintiffs' allegations satisfy the third element of the claim.

D. Failure to Produce Documents

Finally, Defendants argue that the Court should disregard Plaintiffs' allegations that Defendants did not produce the documents Plaintiffs requested. This is not a necessary element of the Parity Act claim and does not affect the outcome of the Motion, so the Court will not address it.

## IV.   CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss Plaintiffs' Second Cause of Action (Docket No. 14) is DENIED.

DATED January 29, 2021.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[42] *Theo M. v. Beacon Health Options*, No. 2:19-cv-364-JNP, 2020 WL 5500529, at *6 (D. Utah Sept. 11, 2020) (unpublished); *Heather E.*, 2020 WL 4365500, at *3; *Denise M. v. Cigna Health*, No. 2:19-CV-975-DAK, 2020 WL 3317994, at *2 (D. Utah June 18, 2020) (unpublished); *M.S. v. Premera Blue Cross*, No. 2:19-cv-199-RJS, 2020 WL 1692820, at *5 (D. Utah Apr. 7, 2020) (unpublished); *David P.*, 2020 WL 607620, at *19; *Peter E.*, 2019 WL 6118422, at *3; *Michael W.*, 420 F. Supp. 3d at 1237.